United States District Court
Southern District of Texas
**ENTERED**
March 20, 2017
David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:16-CV-02906** |
| | § | |
| **AYMAN  JARRAH; aka YURMAN,** *et al*, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Defendants Ayman Jarrah and Land Guardian, Inc. (collectively "Defendants") have filed a motion to dismiss the complaint of Plaintiff United States of America (Doc. No. 10). After considering the motion, response thereto and the applicable law, the Court finds that Defendants' motion must be denied.

### I.    BACKGROUND

The United States has alleged that Defendants created and executed discriminatory policies and practices at a nightclub in Houston, Texas. Mr. Jarrah and Land Guardian own and operate the nightclub in question, formerly known as Gaslamp and now 360 Midtown (hereinafter "Gaslamp"). (Doc. No. 1 ¶¶ 6-7.)

According to the United States, Defendants and their employees implemented policies and practices that include: "(1) charging African-Americans, Hispanics, and Asian-Americans a cover charge to enter the establishment while not imposing such a charge on similarly situated white patrons; and (2) otherwise discouraging and/or denying African-American, Hispanic, and Asian-American patrons admission to the establishment while offering admission to similarly situated white patrons." (Doc. No. 1 ¶ 16.) The United States cites two instances in 2014 and 2015 when Asian-American, African-American and Hispanic patrons were charged a cover fee

1

to enter the Gaslamp, but white patrons were not. (Doc. No. 1 ¶ 18.) Additionally, in 2014, an African-American patron allegedly was denied entry based on her clothing, while a white customer wearing similar apparel was allowed to enter. Gaslamp did not have a dress code posted at the premises or on its website. (Doc. No. 1 ¶ 19.) This conduct is purportedly consistent with Mr. Jarrah's instructions to Gaslamp employees. The complaint also states Mr. Jarrah used racial slurs and other derogatory terms when referring to patrons of color. (Doc. No. 1 ¶ 17.)

The Government asks the Court to declare that Defendants' practices and policies violate Title II Of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq.*, and to enjoin Defendants from engaging in any conduct that denies or abridges rights secured by Title II. Defendants have filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Procedure 12(b)(6).

## II.   LEGAL STANDARDS

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A pleading must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 680 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citation omitted). Rather than evaluate the merits of the allegation, the Court must find only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

A Rule 12(b)(6) motion should be granted only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *R2 Investments LDC*, 401 F.3d at 642. "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009) (internal citation omitted).

## III.   ANALYSIS

The central dispute between the parties is whether the complaint's references to racial slurs and instances of differential treatment of white customers and customers of color constitutes a claim for a pattern and practice of discrimination. Defendants adamantly maintain that these incidents are insufficient to make out a pattern or practice claim. Defendants also insist that the United States may not seek injunctive relief because there is no ongoing injury. However, the Court finds that the complaint provides more than enough factual detail to state a claim for a pattern or practice of discrimination, and the Government may request injunctive relief to redress those alleged violations.

### A.  Claim under Title II

Under Title II of the Civil Rights Act of 1964 "all persons shall be entitled to the full and

equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. §200a(a). The Gaslamp is a place of public accommodation under the statute. *See* 42 U.S.C. §200a(b); *Daniel v. Paul*, 395 U.S. 298, 306 (1969); *United States v. DeRosier*, 473 F.2d 749, 752 (5th Cir. 1973). The Attorney General may bring a civil action whenever she "has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by [Title II], and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights." 42 U.S.C. § 2000a-5(a).

The United States alleges Defendants violated Title II by implementing policies to treat customers of color and white customers differently, exhibited by derogatory speech, different cover charges and different dress codes. Defendants do not and cannot credibly dispute that these acts are discriminatory under law. Rather, they argue that the low number of cited incidents do not give rise to a "pattern or practice" of discrimination. The Court disagrees.

"The words 'pattern or practice' were not intended to be esoteric words of art. There is nothing magic in their meaning." *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 123–24 (5th Cir. 1973). Courts interpreting these words have reached different conclusions as to the relevance of frequency, numerosity or recency of discriminatory conduct. "Pattern or practice" requires the Government to show more than "mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977). *See also United States v. Pelzer Realty Co.*, 484 F.2d 438, 445 (5th Cir. 1973); *Bob Lawrence Realty*, 474 F.2d at 123–24; *United States v. W. Peachtree Tenth Corp.*, 437 F.2d 221, 227 (5th Cir. 1971). But there is no specific number of incidents required to form a pattern or practice. *See*

4

*Bob Lawrence Realty*, 474 F.2d at 124; *West Peachtree*, 437 F.2d 221 at 227. Further, courts outside of the Fifth Circuit have held that a showing of a discriminatory policy constitutes a pattern or practice. *See, e.g. United States v. Garden Homes Mgmt., Corp.*, 156 F. Supp. 2d 413, 423 (D.N.J. 2001) ("Proof that a party adopted a discriminatory policy satisfies the Fair Housing Act's pattern and practice requirement"); *United States v. City of Chicago Heights*, 161 F. Supp. 2d 819, 842 (N.D. Ill. 2001) ("Attorney General may demonstrate the existence of a 'pattern or practice' of discrimination by showing the existence of a discriminatory policy alone").

Defendants cite several cases in which courts rejected discrimination claims for a failure to show a large enough number of discriminatory incidents. The number-based interpretation of "pattern and practice" is less appropriate in the instant case. First, several of Defendant's cases are actions under 42 U.S.C. §1983, in which plaintiffs have tried to impute municipal liability by showing one employee's conduct reflects a pattern across the city department. *See, e.g. Fraire v. City of Arlington*, 957 F.2d 1268, 1279 (5th Cir. 1992)*; McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). Whereas courts may require numerosity in order to find that a municipality ratified conduct that it does not explicitly endorse, this Court does not need to make such an inference. The United States alleges that Defendants created the discriminatory policy and instructed employees to follow it. This instruction would constitute a pattern or practice of discrimination.

Second, plaintiffs in other cases cited by Defendants relied on widespread similar conduct to show that acts were discriminatory and not decisions taken for innocuous reasons. *See,* e.g. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 358 (2011) (requiring more allegations of gender-based discrimination across larger geographic area to show nationwide policy of considering gender in pay and promotion decisions); *Goff v. Cont'l Oil Co.*, 678 F.2d 593, 597

(5th Cir. 1982) *overruled by Carter v. S. Cent. Bell*, 912 F.2d 832 (5th Cir. 1990) (accounts by employees in other division do not prove pattern or practice of company-wide discrimination). Unlike in *Wal Mart* and *Goff*, the conduct alleged here, even when considered in an isolated instance, shows disparate treatment of customers based on race, color and/or national origin. The United States does not rely on the pervasiveness of Defendants' conduct to show it stems from a discriminatory intent.

Finally, the Court notes that many of the cases cited by both parties progressed to summary judgment or trial. Defendants fail to recognize the appropriate burdens at the motion to dismiss stage. The purpose of a complaint is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). The United States has provided such notice. The United States alleges that Defendants operated under a policy of treating customers differently based on their race, color and/or ethnicity. The United States may ultimately prove the policy existed—and therefore Defendants had a practice—without showing a high volume of discriminatory incidents. When reviewing a motion to dismiss, the Court does not expect or require a plaintiff to reference every instance of discriminatory conduct. The Court must find only that the United States has asserted a claim that Defendants deprived customers of the full and equal enjoyment of the Gaslamp and intended to deny them of those rights. The complaint states such a claim.

### B.  Injunctive Relief

Defendants further argue that the United States may not seek an injunction because there is no ongoing discrimination and no threat of imminent irreparable harm. (Doc. No. 10 at 7.) They rely on the fact that the United States mentions only three discriminatory acts over a two-

year period in its complaint, and none in the last year. According to Defendants, the United States cannot show a likelihood of future injury and may not seek to enjoin a practice or policy that is not in effect. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983). The Court is not persuaded by Defendants' argument.

The United States may seek from the court "a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (U.S. 1975); *see also* 42 U.S.C. §2000a-5(a). The cessation of illegal conduct does not render a decree unnecessary. *Tyson v. Cazes*, 363 F.2d 742, 743 (5th Cir. 1966). "[T]he court's power to grant injunctive relief survives discontinuance of the illegal conduct." *Bob Lawrence Realty*, 474 F.2d 115 at 126. Even if the Defendants had ended their alleged discriminatory practices and policies, the Court could still issue an injunction to prevent a return to such unlawful activity.

The Court does not have to venture to a hypothetical world in which the Gaslamp has ceased all discriminatory conduct. The United States has alleged that Defendants have an ongoing policy of discrimination. (Doc. No. 1 ¶ 16.) This policy alone, if proven, creates an imminent threat of future discrimination. If the United States demonstrates there is an ongoing pattern or practice of discrimination, then the Defendants will bear the burden of showing that an injunction is not necessary. *See United States v. Balistrieri*, 981 F.2d 916, 933–34 (7th Cir. 1992). The complaint's lack of facts about recent discriminatory incidents neither implies nor proves that Defendants have permanently ceased discriminating. At this stage of litigation, when the United States has stated a plausible claim for a pattern or practice of discrimination, Defendants have no basis to argue that an injunction is unnecessary.

**IV.**     **CONCLUSION**

The United States has made well-pleaded allegations of a pattern and practice of discrimination by Defendants. The parties deserve the opportunity, respectively, to substantiate, and defend against, those allegations. Therefore, the Court hereby **DENIES** Defendants' Motion to Dismiss (Doc. No. 10).

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on the 20th of March, 2017.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

8